UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROQUE CHAVEZ PORTILLO,
Petitioner,

-v-

PAUL ARTETA, *et al.*,
Respondents.

26-CV-6346 (JPO)

MEMORANDUM & ORDER

J. PAUL OETKEN, District Judge:

Petitioner Roque Chavez Portillo, a native and citizen of El Salvador, entered the United States without inspection at an unknown time. (ECF No. 13 ¶¶ 3-4). He claims it was sometime around 2020. (ECF No. 1 ¶ 18.) On August 1, 2023, Chavez Portillo was convicted *in absentia* of attempted murder in El Salvador, and on November 27, 2023, Chavez Portillo was convicted *in absentia* of murder in El Salvador. (ECF No. 13 ¶¶ 5-6.) On March 7, 2026, Chavez Portillo was arrested in his driveway and taken into custody by Immigration and Customs Enforcement ("ICE") officials. (*Id.* ¶ 12.) On July 26, 2026, Chavez Portillo filed this petition for a writ of habeas corpus under 28 U.S.C. § 2241 seeking a prompt, constitutionally adequate bond hearing. (ECF No. 1 ¶ 5.) At the time the petition was filed, Chavez Portillo was detained at the Orange County Jail in Goshen, New York. (*Id.* ¶ 6)

Respondents assert the authority to detain Chavez Portillo under 8 U.S.C. § 1226(c). (ECF No. 7 at 1; ECF No. 14 at 5.) That provision of the Immigration and Nationality Act provides for the mandatory detention of noncitizens who have been convicted of particular criminal offenses, including crimes involving moral turpitude, while their removal proceedings are ongoing. *See* 8 U.S.C. § 1226(c)(1)(A). Because detention under § 1226(c) is mandatory, the text of the statute itself does not provide for an initial bond determination, and it does not

place a limit on how long a noncitizen may be detained without a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 303-06 (2018). Nevertheless, the indefinite detention of noncitizens—under § 1226(c) or otherwise—raises serious constitutional concerns. *See Black v. Decker*, 103 F.4th 133, 143 (2d Cir. 2024) (en banc). As a result, due process itself requires that the Government provide noncitizens detained under § 1226(c) with a bond hearing once their detention has become "unreasonably prolonged." *Id.*

Importantly, in *Black*, the Second Circuit declined to impose a bright-line rule as to *when* a noncitizen's detention under § 1226(c) becomes "unreasonably prolonged." *Id.* at 150-51. Instead, district courts in this Circuit must apply the *Mathews* test on a case-by-case basis to determine "whether and when due process requires that a particular detained noncitizen receive a bond hearing." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Under that test, courts consider three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Matthews*, 424 U.S. at 335; *see Black*, 103 F.4th at 151.

Chavez Portillo does not dispute that he is being detained under § 1226(c).[1] (*See* ECF No. 1 ¶ 26.) He argues, however, that his detention has become unconstitutionally prolonged and that, under the *Mathews* test, he is entitled to a bond hearing accordingly. (*Id.* ¶¶ 53-60.) Chavez Portillo also insists that the Government should bear the burden of proving by clear and

[1] Chavez Portillo does, however, maintain that he is innocent of the charges for which he was convicted *in absentia*. (ECF No. 1 ¶ 22.)

convincing evidence that he is a danger or a flight risk at that bond hearing, and that the adjudicator must consider his ability to pay bond as well as any alternatives to detention. (*Id.* ¶¶ 44-48.) The Court agrees.

The first *Mathews* factor—the "private interest that will be affected by the official action"—weighs heavily in Chavez Portillo's favor. 424 U.S. at 335. Chavez Portillo's "interest in being free from imprisonment" is "the most significant liberty interest there is," and he has now been detained for more than six months. *See Black*, 103 F.4th at 151 (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)); *see also D.C. v. Noem*, 825 F. Supp. 3d 309, 319-320 (S.D.N.Y. 2026) (explaining how courts in this Circuit have "underscored the heightened severity of detention exceeding six months"). During that prolonged detention, Chavez Portillo has been separated from his family and community, including his partner and his three-year-old autistic child. (ECF No. 1 ¶ 19.) And Chavez Portillo, like other § 1226(c) detainees, has no administrative mechanism to challenge the length of his detention. *Black*, 103 F.4th at 151.[2] His private interest is therefore significant.

The second *Mathews* factor—"the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards"—weighs heavily in Chavez Portillo's favor, too. 424 U.S. at 335. For § 1226(c) detainees like Chavez Portillo, there are few, if any, meaningful procedural safeguards that protect against an erroneous deprivation of

[2] Respondents insist that Chavez Portillo can challenge his detention by way of a *Joseph* hearing. (ECF No. 14 at 15.) But as Respondents themselves note (*id.*), *Joseph* hearings allow noncitizens to dispute their *classification* under § 1226(c), *see Matter of Joseph*, 22 I. & N. Dec. 799, 803 (B.I.A. 1999). That is, they allow noncitizens to argue that they have not committed or been convicted of the kinds of offenses that would subject them to mandatory detention under § 1226(c). *See Nielsen v. Preap*, 586 U.S. 392, 418 n.8 (2019). They do not allow noncitizens to challenge the length of their detention under § 1226(c). And that is what Chavez Portillo does here. (ECF No. 1 ¶ 53.)

liberty. *Black*, 103 F.4th at 152. And indeed, the procedural protections required to guard against that deprivation increase "as the period of confinement grows." *Velasco Lopez*, 978 F.3d at 853 (cleaned up). Here, an individualized, constitutionally adequate bond hearing would allow someone to review Chavez Portillo's custody status for the first time in over six months. *See M.P.L. v. Arteta*, No. 25-CV-5307, 2025 WL 2938993, at *3 (S.D.N.Y. Oct. 16, 2025). That additional procedural safeguard would certainly add value for someone who, like Chavez Portillo, has lived in the United States for three years and "built a rich life" here, insists that he is innocent of the charges for which he was convicted in *absentia*, and therefore contends that he is not a danger to the community or a flight risk. (*See* ECF No. 1 ¶¶ 19, 22.)

The third *Mathews* factor—"the Government's interest," including the "fiscal and administrative burdens" that additional procedures would create—also weighs in Chavez Portillo's favor. 424 U.S. at 335. To be sure, the Government has an interest in "ensuring the noncitizen's appearance at proceedings" and "protecting the community from noncitizens who have been involved in crimes that Congress has determined differentiate them from others." *Black*, 143 F.4th at 153. But here, as in *Black*, a constitutionally adequate bond hearing would "do nothing to undercut those interests," because that bond hearing will give an immigration judge the opportunity to evaluate exactly those two things: whether Chavez Portillo poses a danger to the community or is a flight risk. *Id.* And the burden of conducting a bond hearing is "minimal"—after all, bond hearings are "a routine feature of immigration proceedings." *Veletanga v. Noemi*, No. 25-CV-9211, 2025 WL 3751865, at *7 (S.D.N.Y. Dec. 26, 2025). This factor thus weighs in Chavez Portillo's favor, too. Chavez Portillo is therefore entitled to habeas relief in the form that *Black* endorses: a bond hearing at which the Government bears the burden of proving by clear and convincing evidence that he is a danger or a flight risk, and at which the

adjudicator considers Chavez Portillo's ability to pay bond as well as any alternatives to detention. *See Black*, 103 F.4th at 155.

Chavez Portillo also argues that this Court, not an immigration judge, should conduct his bond hearing. But immigration judges typically conduct bond hearings in immigration proceedings unless "'atypical' circumstances" specific to a particular noncitizen (for example, a "noncitizen's 'complicated' detention history") warrant otherwise. *See D.C.*, 825 F. Supp. 3d at 325 (quoting *L.G.M. v. LaRocco*, 788 F. Supp. 3d 401, 405-06 (E.D.N.Y. 2025)); *see also M.P.L.*, 2025 WL 2938993, at *5. Chavez Portillo has not identified any such circumstances here; mostly, he contends that immigration judges across the board are incentivized to deny bond. (*See* ECF No. 17 at 12-14.) There is "no basis to depart from the common practice of ordering a bond hearing before an [immigration judge], whose expertise and experience in this area will enable efficient resolution of the proceedings consistent with immigration court precedents." *D.C.*, 825 F. Supp. 3d at 325.

Accordingly, the petition is GRANTED in part and DENIED in part. Respondents are ordered to provide Chavez Portillo with a bond hearing before an immigration judge on or before Friday, October 2, 2026. At that bond hearing, the Government shall bear the burden of demonstrating by clear and convincing evidence that Chavez Portillo is either a danger to the community or a flight risk, and the immigration judge must consider both Chavez Portillo's ability to pay bond and alternatives to detention for assuring his appearance. The Court denies Chavez Portillo's petition insofar as it asks this Court to conduct the bond hearing.

Respondents shall furnish a copy of this order to the immigration judge who conducts the bond hearing. Respondents shall also inform this Court of the disposition of Chavez Portillo's

bond hearing no later than one business day after it occurs and furnish an audio recording or transcript as soon as possible thereafter.

SO ORDERED.

Dated: September 18, 2026
New York, New York

J. PAUL OETKEN
United States District Judge